**Nina C. & William Michl OWENS**

v.

**CONCRETE PIPE & PRODUCTS COMPANY, et al.**

**Civ. A. No. 87–6633.**

United States District Court,
E.D. Pennsylvania.

March 22, 1989.

Donna Bailey McCarthy, Alexander Ewing, Jr., Gollatz Griffin Ewing & McCarthy, Philadelphia, Pa., for Nina C. and William M. Owens.

Barbara Pennell, Thompson & Pennell, Philadelphia, Pa., for Concrete Pipe & Products Co.

John J. Hatzell, Jr., Philadelphia, Pa., for Fosroc–Preco.

## OPINION

GAWTHROP, District Judge.

Plaintiffs, Nina Owens and her husband William, brought this suit against defendant Concrete Pipe and Products Co. ("CP & P"), on theories of negligence and strict liability in tort, for damages allegedly sustained as a result of Ms. Owens' exposure to toxic chemicals while she was an inspector at CP & P's worksite. CP & P, which used the chemicals to manufacture concrete sound barriers, has impleaded Fosroc–Preco, the alleged manufacturer of the chemicals, as a third party defendant. All parties intend to present expert testimony at trial.

Presently pending before the court are two motions, filed on behalf of plaintiffs, to preclude defendants from offering the testimony of two potential expert witnesses. The motions raise the question of whether experts who hold doctorates in chemistry should be disqualified from offering expert testimony on the medical effects of toxic chemicals simply because they are not medical doctors. Upon the following reasoning, I conclude that the proffered witnesses should be allowed to testify, and plaintiffs' motions to preclude will therefore be denied.

### Background

The two witnesses whose testimony plaintiffs seek to bar are Drs. Francis Pfeiffer and Gary Lage. Dr. Pfeiffer holds a doctoral degree in chemistry, and Dr. Lage is a Ph.D. in pharmacology and a diplomate of the American Board of Toxicology. Both men also apparently have considerable practical experience in toxicology, pharmacology, and related subjects; indeed, Dr. Lage is the former chairman of the Department of Pharmacology and Toxicology at the Philadelphia College of Pharmacy and Science, and has authored or co-authored a lengthy list of scholarly articles on these subjects.[1]

In his pretrial report, Dr. Lage concluded: "It is my opinion, based on the material I reviewed and on the toxicological literature, that the potential exposures experienced by Ms. Owens ...to the very common chemicals used by [defendant CP & P] could not have produced or exacerbated the chronic medical problems that she claims." Dr. Pfeiffer reached a similar conclusion, finding that "the medical problems reported by Nina Owens were neither initiated nor exacerbated by her passive exposure, if any, to the [defendants' chemicals]. Her claim that these substances caused her chronic medical problems has no merit, and is not consistent with the large body of biological, medical and other scientific data reported for these products."

### Discussion

Plaintiffs contend that these statements are medical opinions, and that both witnesses should be precluded from giving such opinions at trial because they are not physicians. In response, defendants contend that their expert witnesses are fully qualified to speak to the issue of causation because of their extensive knowledge of the chemicals involved.

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Although a trial court has broad discretion in determining the competency of an expert witness, *Aloe Coal Co. v. Clark Equipment Co.*, 816 F.2d 110, 114 (3d Cir.1987), the modern trend in the law is to allow

---

1. I note that in the brief accompanying her motion, plaintiff suggests that Dr. Pfeiffer's background may not qualify him as an expert on the particular chemicals involved in this litigation. However, since the issue has not been squarely raised, I do not address it here.

experts in subjects such as biochemistry and toxicology to offer opinions on the causes of illness even though they are not medical doctors. *See, e.g., Dawsey v. Olin Corp.,* 782 F.2d 1254 (5th Cir.1986) (Ph.D. in biochemistry with experience in researching the effects of phosgene on animals was competent to testify on effects of phosgene on humans); *Backes v. Valspar Corp.,* 783 F.2d 77, 79 (7th Cir.1986) (collecting cases in which courts permitted toxicologists to testify about the effects of poisonous substances on human health even though they did not possess a medical degree).

■ Dr. Lage and Dr. Pfeiffer may not be qualified to diagnose Ms. Owens' medical condition, but this does not disqualify them from giving testimony concerning topics such as the risks associated with varying degrees of exposure to certain chemicals. According to their respective reports, both expert witnesses are apparently prepared to testify that, based on their personal experience and their knowledge of the scientific literature, the concentrations of chemicals which Ms. Owens was exposed to presented a zero risk of causing the harms which she allegedly suffers from. To the extent that their expert testimony is proffered for the purpose of establishing or rebutting causation, and is based on their knowledge of the chemicals rather than on a medical diagnosis of plaintiff's condition, their evidence is admissible. *See Roberts v. United States,* 316 F.2d 489 (3d Cir.1963) (holding that toxicologist, who had extensive experience in researching the chemicals involved, was competent to testify in support of plaintiff's theory that defendant's chemicals had caused plaintiff's injuries, even though toxicologist was not a medical doctor); *Gideon v. Johns–Manville Sales Corp.,* 761 F.2d 1129, 1136 (5th Cir. 1985) (epidemiologist without medical degree competent to testify about the risks of cancer from asbestos exposure).

This holding is also consistent with the general rule that questions relating to the bases and sources of an expert's opinion go to the weight of the opinion rather than its admissibility. *Viterbo v. Dow Chemical Co.,* 826 F.2d 420, 422 (5th Cir.1987).

Plaintiffs will be free to argue at trial that Pfeiffer's and Lage's opinions relating to causation merit little weight given their lack of formal medical training.

■ Even if the testimony of Drs. Pfeiffer and Lage is admissible under Rule 702, plaintiffs contend that their testimony should be prohibited under Rule 403, which requires the court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ..." Fed.R.Evid. 403. However, trial courts "are properly reluctant to exclude relevant evidence unless there is a powerful and compelling reason to do so." *In re Agent Orange Litigation,* 611 F.Supp. 1223, 1255 (E.D.N.Y.1985) (Weinstein, C.J.), *aff'd* 818 F.2d 187, *cert. denied sub nom. Lombardi v. Dow Chemical Co.,* —— U.S. ——, 108 S.Ct. 2898, 101 L.Ed.2d 932 (1988); *see also* Fed.R.Evid. 102, 401–403. I conclude that the risk that the testimony of defendants' experts would confuse or prejudice a jury in this case is slight. To the extent that there may be a risk of prejudice, plaintiffs' remedy is to file a motion in limine requesting the court to limit the scope of the experts' testimony; the facts do not, however, warrant the extreme remedy of an order barring defendants' experts from testifying altogether.

■ Finally, plaintiffs ask the court for an order precluding defendant CP & P from offering any expert testimony other than that of witnesses who have already been identified in CP & P's responses to plaintiff's interrogatories. Although CP & P admits that it did not identify all of its possible experts in its September 7, 1988, answers to interrogatories, CP & P points out that they did not receive a copy of the report of plaintiffs' industrial hygienist until December 16. CP & P argues that it would be unrealistic for plaintiffs to expect them to identify all of defendant's experts until it had the benefit of reviewing the tardily submitted expert report of plaintiff's industrial hygienist. Where both parties are guilty of discovery violations, the failure of a defendant to identify its ex-

perts in a timely manner does not warrant the exclusion of witnesses' trial testimony, absent a showing of prejudice. *Neider v. Chrysler Corp.*, 361 F.Supp. 320, 324 (E.D. Pa.1973), *aff'd* 491 F.2d 750 (3d. Cir.1974). At bar, plaintiffs have failed to show that they have suffered any prejudice, and CP & P avers that they have now provided plaintiffs with an updated list of trial experts; given these circumstances preclusion of CP & P's expert testimony is not warranted.

For the foregoing reasons, plaintiffs' motions will be denied.